IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH RODRIGUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY AND COUNTY OF | : | |
| PHILADELPHIA, ET AL | : | NO.  15-4973 |

<u>**MEMORANDUM**</u>

**Padova, J.**                                                                                      **June 16, 2016**

Plaintiff brings this action against the City and County of Philadelphia (the "City of Philadelphia" or the "City"), Police Commissioner Charles H. Ramsey, Philadelphia Police Officers James Kuzowski and Derek Lowery, and three John Doe Police Officers, alleging violations of his civil rights resulting from his arrest and incarceration on criminal charges that were later dismissed.  Presently before the Court is the Motion to Dismiss filed by the City of Philadelphia and Police Commissioner Ramsey.  For the following reasons, the Motion is granted in part and denied in part.

**I.      BACKGROUND**

The First Amended Complaint alleges the following facts.  Plaintiff is a Hispanic-American man who lives in the City of Philadelphia.  (1st Am. Compl. ¶ 6.)  On October 4, 2013, at approximately 9:30 p.m., Plaintiff attended the funeral of a relative on Frankford Avenue in Philadelphia.  (<u>Id.</u> ¶ 12.)  After the service he noticed that one of his relatives was engaged in a physical confrontation with another woman.  (<u>Id.</u> ¶ 18.)  While Plaintiff was attempting to remove his relative from the confrontation, either Police Officer Kuzowski or Police Officer Lowery struck him the head without provocation or justification.  (<u>Id.</u> ¶¶ 19-20.) Plaintiff was knocked unconscious by the blow, which also caused him to bleed from the nose

and head.  (Id. ¶ 21.)  Plaintiff and his family members asked to see a commanding officer so that they could file a complaint, but the police officers on the scene ignored their request.  (Id. ¶ 22.) A Philadelphia police captain later arrived at the scene and spoke to the police officers who were present.  (Id. ¶ 23.)

Plaintiff spoke with the police captain after the captain met with the police officers.  (Id. ¶ 24.)  Plaintiff informed the police captain that he wished to file an official complaint.  (Id. ¶ 25.) The police captain told the police officers who were present that Plaintiff should be escorted to Frankford Hospital to be treated for his injuries and then to Northeast Detectives to file a complaint.  (Id.)  At 2:00 a.m., four hours after he was hit on the head, and while he was at the hospital, Plaintiff was informed by two police officers that he was under arrest.  (Id. ¶ 27.)  The police officers did not tell Plaintiff why he was being arrested.  (Id.)  Plaintiff was incarcerated for two days, during which time the Philadelphia Police Department did not question Plaintiff or any witness regarding the confrontation.  (Id. ¶ 28.)  All criminal charges brought against Plaintiff were later dismissed.  (Id. ¶ 31.)  Plaintiff filed a Citizens Complaint on October 10, 2013.  (Id. ¶ 30.)

The First Amended Complaint asserts ten causes of action.[1]  Count I asserts a claim against all Defendants pursuant to 42 U.S.C. §§ 1983 and 1985 for excessive force in violation of Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments.[2]  Count II asserts a

---

[1]Count XI asserts a claim for monetary damages and Count XII is a demand for a jury trial.  These are not causes of action.

[2]The First Amended Complaint does not clearly plead the statutes pursuant to which Plaintiff seeks relief.  While the title of Count I states that Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1983 and 1985, the wherefore clause states that Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986 and 1988, the First, Fourth, Fifth, and Fourteenth Amendments, other constitutional provisions, federal statutes, and state laws.  The wherefore clauses in Counts II through X are identical to that in Count I, rendering those Counts similarly

claim against all Defendants pursuant to § 1983 for violation of Plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches and seizures.   Count III asserts a claim pursuant to § 1983 against Police Officers Kuzowski, Lowery, and John Does 1-3 for failure to intervene to prevent the exercise of excessive force against Plaintiff in violation of Plaintiff's rights under the Fourth Amendment.   Count IV asserts a claim pursuant to § 1983 against Police Officers Kuzowski, Lowery, and John Does 1-3 for conspiracy to interfere with Plaintiff's constitutional rights to be free from unjustified and excessive force and to be free from unreasonable search and seizure in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.   Count V asserts a claim pursuant to § 1983 against Commissioner Ramsey for failure to supervise.   Count VI asserts a claim pursuant to § 1983 against Police Officers Kuzowski, Lowery, and John Does 1-3 for assault and battery in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.  Count VII asserts a claim pursuant to §§ 1983, 1985, 1986 and 1988 against all Defendants for false arrest in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.[3]   Count VIII asserts a claim under Pennsylvania state law against all Defendants for false imprisonment.   Count IX asserts a claim pursuant to § 1983 against all Defendants for malicious prosecution and abuse of process in violation of Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments.   Count X asserts a claim under Pennsylvania state law against all Defendants for malicious prosecution and abuse of process.

---

unclear.  We have attempted to summarize Plaintiff's claims in the manner which makes the most sense, considering all of the facts alleged in each Count.

[3]Count VII also alleges that Defendants' arrest of Plaintiff violated his rights under the Ninth Amendment.  However the Ninth Amendment states only that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  The inclusion of the Ninth Amendment in Count VII thus appears to be a typographical error.

## II.     LEGAL STANDARD

Defendants City of Philadelphia and Commissioner Ramsey move to dismiss the claims against them for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).   When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff."  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).   Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"   Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)).   The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678

4

(citing <u>Twombly</u>, 550 U.S. at 556).  "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 786 (3d Cir. 2016) (alteration in original) (quoting <u>Iqbal</u>, 556 U.S. at 678).  "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Id.</u> at 786-87 (quoting <u>Iqbal</u>, 556 U.S. at 679).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  <u>W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank</u>, 712 F.3d 165, 169 (3d Cir. 2013) (quoting <u>Twombly</u>, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Claims Against Commissioner Ramsey

The Moving Defendants have moved to dismiss the claims raised against Commissioner Ramsey in Counts I, II, V, VII, VIII, IX , and X on the ground that the First Amended Complaint fails to allege that he was personally involved in any alleged wrongdoing.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  <u>Iqbal</u>, 556 U.S. at 676. Notwithstanding this requirement, "a supervisor may be liable for unconstitutional actions undertaken by a subordinate" in two ways.  <u>Jankowski v. Lellock</u>, No. 15-2942, 2016 WL 2946210, at *3 (3d Cir. May 20, 2016).  "First, liability may attach if the supervisor, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  <u>Id.</u> (alteration in original) (quoting <u>A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004)).  Second, "'a supervisor may be personally liable under § 1983 if he or she

participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." Id. (quoting A.M., 372 F.3d at 586). The Third Circuit has further explained that, in the first situation, "a state official, by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury *does* occur." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 320 (3d Cir. 2014), overruled on other grounds sub nom. Taylor v. Barkes, 135 S. Ct. 2042 (2015). "Liability in such a situation is, as Iqbal requires, imposed not vicariously but based on the supervisor's own misconduct, because to exhibit deliberate indifference to such a situation is a culpable mental state . . . ." Id. (citing Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Count V is the only Count of the First Amended Complaint that asserts a supervisory liability claim against Commissioner Ramsey. Counts I, II, VII, VIII, IX, and X assert claims against Commissioner Ramsey based on his own individual conduct.[4] However, the First Amended Complaint does not allege that Commissioner Ramsey personally used any force against Plaintiff or took part in Plaintiff's arrest, imprisonment, prosecution, or the violation of Plaintiff's due process rights.[5] Consequently, we conclude that Counts I, II, VII, VIII, IX, and X

---

[4]The law regarding supervisory liability for § 1983 claims does not apply to Counts VIII and X, which assert state law claims. However, Plaintiff does not argue that Commissioner Ramsey is vicariously liable for his subordinates' conduct under state law with respect to the claims asserted in Counts VIII and X so it appears that these Counts also assert claims against Commissioner Ramsey based on his own individual conduct.

[5]Plaintiff does not oppose the Motion to Dismiss on the ground that Commissioner Ramsey personally participated in the violation of Plaintiff's rights. He argues only that the First Amended Complaint alleges a plausible claim of supervisory liability against Commissioner Ramsey.

fail to state claims against Commissioner Ramsey upon which relief may be granted and we grant the Motion to Dismiss with respect to Commissioner Ramsey as to those Counts.

Count V alleges that Commissioner Ramsey is liable to Plaintiff for failing to supervise his employees or failing to take meaningful corrective action.  (1st Am. Compl. ¶ 85.)  "Section 1983 liability attaches only if there is either a supervisor-subordinate relationship or a state law duty to control the actions of the primary actor."  Jankowski, 2016 WL 2946210, at *3 (citing C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000); and Robinson v. City of Pittsburgh, 120 f.3d 1286, 1294 (3d Cir. 1997), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  The First Amended Complaint alleges that Commissioner Ramsey was responsible for the supervision of "the individually-named Defendant police officers in this case."  (lst Am. Compl. ¶ 8.)  We conclude that the First Amended Complaint plausibly alleges a supervisory relationship between Commissioner Ramsey and Defendant Police Officers Kuzowski and Lowery, and we next consider whether the First Amended Complaint plausibly alleges a claim for supervisory liability against Commissioner Ramsey for the actions allegedly taken by Police Officers Kuzowski and Lowery.

In order to establish a claim for failure to supervise under § 1983, a complaint must satisfy the following five requirements:

> "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."

Dotterer v. Pinto, Civ. A. No. 13-6903, 2016 WL 336870, at *9 (E.D. Pa. Jan. 27, 2016) (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) and citing Sample v. Diecks, 885

F.2d 1099, 1118 (3d Cir. 1989)).  The First Amended Complaint alleges that the Philadelphia Police Department, "under the leadership of Defendant Ramsey, has [a] well-known and documented custom, policy and practice of not taking reasonable steps to properly train its police officers to not violate the constitutionally protected rights of the . . . residen[ts] of Philadelphia. This includes, but is not limited to, false arrest of innocent people."   (1st Am. Compl. ¶ 39.) The First Amended Complaint further alleges that, while Commissioner Ramsey has been the Commissioner of the Philadelphia Police Department, he has been unsuccessful in protecting Philadelphia residents from the use of excessive force by Philadelphia Police Officers.  (Id. ¶ 41.) Viewing these allegations in the light most favorable to Plaintiff, we conclude that they sufficiently "identify the specific supervisory practice or procedure that the supervisor failed to employ" so as to satisfy the first requirement for alleging a failure to supervise claim pursuant to § 1983.  Dotterer, 2016 WL 336870, at *9.

The First Amended Complaint also alleges that "[e]ach year, hundreds of law-abiding citizens are the victims of police brutality by" Philadelphia police officers and are "charged and prosecuted for crimes they are innocent of" (1st Am. Compl. ¶ 40), and describes six instances of excessive force or criminal conduct by Philadelphia police officers under the supervision of Commissioner Ramsey (id. ¶¶ 42-47).  The First Amended Complaint describes these specific incidents of false arrest and excessive force as follows:

(1) "the beating of a woman who was present at the September 30, 2012 Puerto Rican Parade" (id. ¶ 42);

(2) "22nd District police officer Scott Ross, who claimed he pulled a citizen over because he saw her talking on her cell phone, punched her in the head, knocking out a tooth,

threw her cell phone on the ground and ran over it with her car," then arrested and

charged her with resisting arrest (id. ¶ 44);

(3) Diop Olugbala was assaulted by police during a 2010 protest at Philadelphia's City

Hall (id. ¶ 45);

(4) a Police Officer struck "an individual in the face while he was handcuffed," the

incident "was caught on video," and Internal Affairs recommended that the officer be

disciplined (id. ¶ 46);

(5) "Tyree Carol was verbally and physically assaulted by Philadelphia Police Officers"

(id. ¶ 47).

In addition, the First Amended Complaint alleges that "[s]ince early 2009, 11 officers, under

Ramsey's supervision, have been arrested on charges including murder, rape and drug dealing"

and that these officers are among "51 police officers fired for misconduct since May 2010."  (Id.

¶ 43.)  Viewing these allegations in the light most favorable to Plaintiff, we conclude that they

sufficiently allege that the existing practices of the Philadelphia Police Department created an

unreasonable risk that individuals in Philadelphia, including Plaintiff, would suffer excessive

force and or false arrest so as to satisfy the second requirement for alleging a failure to supervise

claim pursuant to § 1983.

The First Amended Complaint further alleges that Mr. Olugbala, under the supervision of

Commissioner Ramsey, showed a video of his assault by Philadelphia Police Officers and that

one of the other incidents resulted in an Internal Affairs investigation.  (Id. ¶¶ 45-46.)  The First

Amended Complaint also alleges that some officers supervised by Commissioner Ramsey have

been arrested and others have been fired for misconduct.  (Id. ¶ 43.)  Viewing these allegations in

the light most favorable to Plaintiff, we conclude that they sufficiently allege that Commissioner

Ramsey was aware of an unreasonable risk that Philadelphia Police Officers would falsely arrest or use excessive force on individuals in Philadelphia, including Plaintiff, so as to satisfy the third requirement for alleging a failure to supervise claim pursuant to § 1983.

The First Amended Complaint further alleges that Commissioner Ramsey failed to ensure that Philadelphia residents "would be protected from overzealous police officers who use excessive force" and that Commissioner Ramsey and the Philadelphia Police Department condoned these instances of police brutality without punishing the perpetrators, thus creating an environment in which Philadelphia Police Officers knew that they would not be punished for the use of excessive force. (Id. ¶¶ 41, 48.) Viewing these allegations in the light most favorable to Plaintiff, we find that the First Amended Complaint sufficiently alleges that Commissioner Ramsey was indifferent to the risk that Philadelphia Police Officers would use excessive force and falsely arrest individuals in Philadelphia so as to satisfy the fourth requirement for alleging a failure to supervise claim pursuant to § 1983.

The First Amended Complaint alleges that the Police Officers who used excessive force on Plaintiff and falsely arrested him had committed similar acts in the past against other innocent individuals. (Id. ¶ 34.) The First Amended Complaint also alleges that complaints have been made against these Police Officers in the past and that those complaints have been investigated by Internal Affairs. (Id. ¶ 35.) Viewing these allegations in the light most favorable to Plaintiff, we conclude that they sufficiently allege that the actions of the Police Officers who assaulted and falsely arrested Plaintiff resulted from Commissioner Ramsey's failure to take reasonable steps to properly train Philadelphia Police Officers to not violate the constitutionally protected rights of Philadelphia residents and to protect Philadelphia residents from the use of excessive force.

Therefore, the fifth requirement for alleging a failure to supervise claim pursuant to § 1983 is satisfied.

We further conclude, accordingly, that the First Amendment Complaint plausibly alleges that Commissioner Ramsey, "by virtue of his . . . *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury [did] occur" and, thus, that Commissioner Ramsey may be subject to supervisory liability for the unconstitutional actions of his subordinates.   Barkes, 766 F.3d at 320; see also Farrell v. Northampton Cty., Civ. A. No. 11-3665, 2015 WL 4611298, at *6, *7-8 (E.D. Pa. Aug. 3, 2015) (concluding that evidence that prison supervisors "were aware of a pattern of corrections officers facilitating and encouraging inmate-on-inmate attacks" was sufficient to raise a genuine issue of material fact as to the supervisors' liability under § 1983 for violation of the plaintiff's Eighth Amendment rights).   We therefore deny the Motion to Dismiss as to the claims raised against Commissioner Ramsey in Count V of the First Amended Complaint.

B.      State Law Claims Against the City of Philadelphia

The First Amended Complaint asserts two state law claims against the City of Philadelphia.   Count VIII asserts a claim against the City of Philadelphia under Pennsylvania state law for false imprisonment, and Count X asserts a claim against the City of Philadelphia under Pennsylvania state law for malicious prosecution and abuse of process.   The Moving Defendants have moved to dismiss these claims on the ground that they are barred by the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541, *et seq.* ("PSTCA").   The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property

11

caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. There are eight exceptions to the governmental immunity provided by the PSTCA, so that local agencies such as the City of Philadelphia may be held liable for negligent acts related to: "(1) Vehicle liability"; "(2) Care, custody, or control of personal property"; "(3) Real property"; "(4) Trees, traffic controls, or street lighting"; "(5) Utility service facilities"; "(6) Streets"; "(7) Sidewalks"; and "(8) Care, custody, or control of animals." 42 Pa. Cons. Stat. Ann. § 8542(b). The Pennsylvania Supreme Court has explained the PSTCA is "a legislatively imposed shield of government immunity against any damages on account of any injury to any person or property by any act of a local agency or employees thereof or any other person, except as provided in the statute itself." Kiley v. City of Philadelphia, 645 A.2d 184, 185 (Pa. 1994) (citation omitted). As a result "of the clear intent to insulate government from exposure to tort liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed." Id. at 185-86 (citations omitted). Since the state law claims alleged by the Plaintiff are not encompassed within the eight exceptions to governmental immunity provided by the PSTCA, we find that the City of Philadelphia is immune from suit as to these claims. We conclude, accordingly, that the First Amended Complaint fails to state a facially plausible claim against the City of Philadelphia for false imprisonment in Count VIII and malicious prosecution and abuse of process in Count X, and we grant the Motion to Dismiss with respect to the City of Philadelphia as to those Counts.

C.  Federal Law Claims Against the City of Philadelphia

The First Amended Complaint asserts four federal law claims against the City of Philadelphia. Count I asserts a claim against the City pursuant to 42 U.S.C. §§ 1983 and 1985 for excessive force in violation of Plaintiff's rights under the First, Fourth, Fifth and Fourteenth

Amendments.   Count II asserts a claim against the City pursuant to 42 U.S.C. § 1983 for

violation of Plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches

and seizures.[6]   Count VII asserts a claim against the City pursuant to 42 U.S.C. §§ 1983, 1985,

1986 and 1988 for false arrest in violation of Plaintiff's rights under the Fourth and Fourteenth

Amendments.   Count IX asserts a claim against the City pursuant to 42 U.S.C. § 1983 for

malicious prosecution and abuse of process in violation of Plaintiff's rights under the First,

Fourth, Fifth and Fourteenth Amendments.   The Moving Defendants ask that we dismiss these

claims on the ground that the First Amended Complaint does not allege sufficient facts to

support a claim of municipal liability under Monell v. Department of Social Services, 436 U.S.

658 (1978).

A municipality "may not be sued under § 1983 for an injury inflicted solely by its

employees or agents."   Id. at 694.   Consequently, when a § 1983 claim is asserted against a

municipality, a plaintiff must also demonstrate that his constitutional deprivations were caused

by an official policy or custom of the municipality.   Id.; Bd. of Cty. Comm'rs of Bryan Cty. v.

Brown, 520 U.S. 397, 403 (1997) ("[I]n Monell and subsequent cases, we have required a

plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal

'policy' or 'custom' that caused the plaintiff's injury." (citations omitted)).   A municipal policy

is a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local

governing] body's officers.'"   Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir.

---

[6]Section 1983 claims for false arrest and malicious prosecution arise under the Fourth
Amendment's guarantee of the right to be secure from "unreasonable searches and seizures,"
which is made applicable to the states by the Fourteenth Amendment.   See U.S. Const. amend.
IV; Mapp v. Ohio, 367 U.S. 643, 655 (1961).   It is not clear whether Plaintiff's § 1983 claim for
violation of his rights under the Fourth and Fourteenth Amendments in Count II is different from
his § 1983 claim for false arrest in Count VII and his § 1983 claim for malicious prosecution in
Count IX.   However, our analysis applies to all of Plaintiff's § 1983 claims against the City,
whether or not they are duplicative.

1991) (alteration in original) (quoting <u>Monell</u>, 436 U.S. at 690).  A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'"  <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Bryan Cty.</u>, 520 U.S. at 404).

Significantly, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train" in the absence of a "conscious decision or deliberate indifference of some natural person."  <u>Simmons</u>, 947 F.2d at 1063.  It is therefore the plaintiff's burden "'to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.'"  <u>B.S. v. Somerset Cty.</u>, 704 F.3d 250, 275 (3d Cir. 2013) (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990); and citing <u>Chambers ex re. Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, 587 F.3d 176, 193 (3d Cir. 2009)).  A policymaker is an official with "final, unreviewable discretion to make a decision or take an action."  <u>Andrews</u>, 895 F.2d at 1481 (discussing <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 139–40 (1988)).  Accordingly, to state a <u>Monell</u> claim upon which relief can be granted, a complaint must include the identity of the municipal entity's final policymaker and factual allegations that "link the alleged offending policies or customs to" the final policymaker.  <u>Rees v. Office of Children & Youth</u>, 473 F. App'x 139, 143 (3d Cir. 2012); <u>see also</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 135 & n.11 (3d Cir. 2010) (requiring the plaintiff "to plead in some fashion" the identity of an individual with "final policy making authority, as that is a key element of a <u>Monell</u> claim").

Here, the City argues that all of Plaintiff's federal law claims against it should be dismissed because the First Amended Complaint fails to allege that Commissioner Ramsey, who is identified as the municipal policymaker, directed or participated in an offending policy or

14

custom as required by <u>Monell</u>.  However, as we discussed in Section III.A., above, the First Amended Complaint plausibly alleges facts that link Commissioner Ramsey to the Philadelphia Police Department's failure to train police officers not to violate the constitutional rights of Philadelphia residents through excessive force and false arrest.  However, the First Amended Complaint contains no allegations that link Commissioner Ramsey to any policy or custom of subjecting individuals to malicious prosecution and abuse of process.[7]  We conclude, accordingly, that the First Amended Complaint fails to satisfy the requirement that it plausibly allege facts that link the alleged custom or policy of subjecting individuals to malicious prosecution and abuse of process to Commissioner Ramsey.  <u>See</u> <u>Rees</u>, 473 F. App'x at 143.  We further conclude, accordingly, that the First Amended Complaint fails to state a claim against the City of Philadelphia for malicious prosecution and abuse of process in Count IX and grant the Motion to Dismiss in favor of the City of Philadelphia as to that Count.

The City also argues that the First Amended Complaint fails to plausibly allege municipal liability claims against the City of Philadelphia because it does not allege facts that would establish that Commissioner Ramsey acted with deliberate indifference.  In order to establish a municipality's liability for failure to train its police officers under <u>Monell</u>, "a plaintiff must demonstrate that 'the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'"  <u>Pharaoh v. Dewees</u>, Civ. A. No. 14-3116, 2016 WL 2593842, at *4

---

[7]The First Amended Complaint does not allege that Commissioner Ramsey had a connection to a policy of maliciously prosecuting Philadelphia residents after their arrest, as would be required for a malicious prosecution claim brought against the City.  <u>See</u> <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007) (discussing the requirements for a § 1983 claim for malicious prosecution).  The First Amended Complaint also does not allege that Commissioner Ramsey had a connection to a policy of legitimately initiating prosecution but thereafter using that prosecution "for a purpose other than that intended by the law[,]" as is required for a claim for abuse of process.  <u>Dunne v. Twp. of Springfield</u>, 500 F. App'x 136, 139 (3d Cir. 2012) (quotation omitted).

(E.D. Pa. May 4, 2016) (quoting <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000)). As we discussed in Section III.A., above, the First Amended Complaint alleges several instances of excessive force and false arrest by Philadelphia Police Officers of which Commissioner Ramsey was or should have been aware.  Thus, we conclude that the First Amended Complaint plausibly alleges that Commissioner Ramsey failed to train the police officers he supervised not to violate the constitutional rights of Philadelphia residents through false arrest and excessive force with deliberate indifference to the known or obvious consequences of that failure.  The Motion to Dismiss is therefore denied as to the claims asserted against the City of Philadelphia in Counts I, II, and VII.

## IV.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is granted as to the claims asserted against Commissioner Ramsey in Counts I, II, VII, VIII, IX, and X, and the claims asserted against the City of Philadelphia in Counts VIII, IX, and X.  The Motion to Dismiss is denied as to the claims asserted against Commissioner Ramsey in Count V and the claims asserted against the City of Philadelphia in Counts I, II, and VII.  Plaintiff has requested leave to file an amended complaint in order to cure the deficiencies in the First Amended Complaint.  Plaintiff's request is granted.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.